IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 24-cr-00006-CNS

UNITED STATES OF AMERICA,

 Plaintiff,

v.

1. ANDERSON LEE ALDRICH,

 Defendant.

## GOVERNMENT'S SENTENCING STATEMENT

  The United States of America (the Government), by and through undersigned counsel, hereby submits the following sentencing statement with respect to Anderson Lee Aldrich (the defendant). For the reasons described below, the Government asks the Court to accept the proposed Plea Agreement, which requires the Court to sentence the defendant to life imprisonment without the possibility of parole to be followed by a 190-year sentence of imprisonment (the Recommended Sentence). The defendant's brazen and calculated attacks on the employees and patrons of Club Q, and the impact of the defendant's actions on the greater LGBTQIA+ community, warrant this sentence and meet the goals of sentencing set forth in 18 U.S.C. § 3553(a).

## GUIDELINES CALCULATION

  The Government agrees with the guidelines calculation as set out in the Plea Agreement and the Presentence Report [ECF #15].

## **FACTUAL BACKGROUND**

On November 19, 2022, the defendant carried out a bias-motivated, premeditated, mass-casualty attack at Club Q—one of only a few nightclubs in Colorado Springs, Colorado, catering to the LGBTQIA+ community. Just prior to the shooting, Club Q hosted a Drag Show, which was part of a weekend collection of events centered around Transgender Day of Remembrance that Club Q advertised.

At approximately 11:55 p.m. that evening, the defendant drove a gold Toyota Highlander through the parking lot of Club Q and parked in front of the entryway door of Club Q. The defendant got out of the car wearing a tactical vest with ballistic plates and walked into Club Q carrying an AR-15 style assault rifle and several additional magazines loaded with ammunition. The defendant entered Club Q with the rifle in high ready position (with the firearm at a 45-degree angle and ready to fire) and immediately started shooting. The defendant shot and killed D.A. (Count 1), a Club Q employee, in the vestibule entryway of Club Q. The defendant moved directly from the entrance and fired multiple rounds towards the bar area. The defendant shot and killed R.G.V. (Count 2) in the bar area. The defendant also shot and killed K.L. (Count 3), A.P. (Count 4), and D.R. (Count 5) in the bar area. The defendant moved to the dance floor shortly thereafter still firing the rifle. As the defendant kept firing, the defendant injured—through gunshot wounds or a graze wound—I.A. (Count 6); L.B. (Count 7), T.B. (Count 8), P.C. (Count 9), J.D. (Count 10), A.G. (Count 11), B.H. (Count 12), T.J. (Count 13), F.J. (Count 14), W.K. (Count 15), C.L. (Count 16), J.L. (Count 17), J. Lo. (Count 18), A.M. (Count 19), T.Pr. (Count 20), M.S. (Count 21), E.S. (Count 22), C.S. (Count 23), and J.S. (Count 24). The defendant

2

also attempted to cause bodily injury to many others who were on the Club Q premises through the use of a firearm, including M.A. (Count 25), J.A. (Count 26), M.B. (Count 27), A.B. (Count 28), B.C. (Count 29), D.D. (Count 30), J.F. (Count 31), K.F. (Count 32), R.F. (Count 33), M.G. (Count 34), C.G. (Count 35), S.H. (Count 36), A.L. (Count 37), C.Lo. (Count 38), I.L. (Count 39), D.M. (Count 40), D.N. (Count 41), R.P. (Count 42), S.R. (Count 43), M.R. (Count 44), R.R. (Count 45), S.S. (Count 46), J.T. (Count 47), D.V. (Count 48), R.V. (Count 49), and B.W. (Count 50).

Club Q patrons subdued the defendant, and the defendant remained on the ground until law enforcement arrived. In total, the defendant fired approximately 60 rounds of ammunition from a rifle before the defendant was subdued and placed under arrest. The defendant killed five individuals, caused 16 individuals to suffer gunshot wounds and sustain serious bodily injury, caused two individuals to sustain graze wounds, and victimized 26 other individuals who were present inside Club Q at the time of the shooting. Club Q remains closed—almost 18 months later—as a result of the defendant's attack.

The victims who were present on scene suffered unspeakable physical and emotional trauma and pain. After the defendant's senseless acts of hatred and violence, Club Q looked like a war zone. Reports from the first responders on scene described the cries of victims and not knowing where to start rendering aid because there were so many people who needed care. Victims who were physically capable of assisting officers reported providing care and comfort to individuals who were shot in the chaotic aftermath of this mass shooting. The trauma that the defendant's actions caused also pushed the Colorado Springs medical community to its limit. There were so many victims who needed

medical care that victims were brought to three different local hospitals. There were not enough ambulances to transport all of the individuals who needed to get to a hospital to receive care, so officers started transporting victims in their duty vehicles in order to save as many lives as possible.

The defendant's attack on Club Q was premeditated. The defendant amassed weapons well in advance of the attack on Club Q. Financial records show that the defendant made over $9,000 in weapons-related purchases from at least 56 different vendors between September 2020 and the day of the attack. The defendant patronized Club Q at least eight times prior to the shooting, including on October 1, 2022, on October 29, 2022, and on November 19, 2022, approximately an hour and a half prior to the shooting, ensuring the defendant was familiar with the layout of the club. After the shooting, investigators located (1) a hand drawn map of Club Q with an arrow indicating an entry and exit point; and (2) a black binder of training material entitled "How to Handle an Active Shooter" inside the defendant's apartment.

The defendant used anti-LGBTQIA+ rhetoric and expressed interest in mass shootings prior to the Club Q attack. The defendant told an online acquaintance that the defendant hated the LGBTQIA+ community. On October 28, 2022, the defendant was terminated from a job. Later that day, the defendant's supervisor received thousands of bias-motivated spam email messages using racist and anti-LGBTQIA+ slurs in a spam attack facilitated by the defendant. Around this same period of time, the defendant also posted videos online of a mass shooting in Thailand.

The defendant used an online platform on November 6, 2022, just weeks before the shooting, to disseminate a manifesto purportedly authored by someone who committed a mass shooting earlier that year. This link revealed predominantly racist and anti-Semitic beliefs but also the following statement, "Transgenderism however is a mental illness and should be addressed as such." On November 9, 2022, the defendant sent a list of websites that can be utilized to locate offenders and court dockets, stating "this is for after convictions happen." On November 15, 2022, the defendant sent a zip file containing what purports to be records related to another mass shooting at an LGBTQIA+ establishment. That same day the defendant sent a photograph which appears to depict a rifle sight pointed at a Gay Pride Parade, accompanied by the message "lol."

## **APPLICATION OF THE 18 U.S.C. § 3553(a) FACTORS**

The Recommended Sentence vindicates the goals set forth in 18 U.S.C. § 3553(a). When determining the appropriate sentence, a district court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. *See* 18 U.S.C. § 3553(a). The statute therefore "requires district courts to consider seven factors in sentencing: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing, namely (a) just punishment (retribution), (b) deterrence, (c) incapacitation, and (d) rehabilitation, (3) the kinds of sentences available; (4) the Sentencing Commission Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need for restitution." *United States v. Cookson*, 922 F.3d 1079, 1092 (10th Cir. 2019) (internal quotation marks omitted).

Under these factors, the Recommended Sentence is sufficient, but not greater than necessary.

### A.     *Nature and Circumstances of the Offense*

The nature and circumstances of the offense clearly justify the Recommended Sentence. The defendant committed these crimes because of the actual or perceived sexual orientation and gender identity of the Club Q patrons and employees. Club Q was one of the only public spaces where the LGBTQIA+ community in Colorado Springs felt safe to congregate. The victims and survivors of the shooting and the other members of the Club Q community viewed each other as chosen family, and Club Q was a safe place for members of that family to gather and celebrate. The defendant's violent attack on November 19, 2022, took that safe gathering place away from the victims, survivors, the Club Q community and the LGBTQIA+ community as a whole. Club Q remains closed, almost 18 months after this attack, leaving its community without a sanctuary to process this unspeakable crime.

The horrors that the victims and survivors experienced at the hands of the defendant cannot be overstated. The victims and survivors, who were celebrating Transgender Day of Remembrance, were attacked when they least suspected it by someone who had stood in their presence mere hours before. One victim described the defendant "spray[ing]" Club Q patrons "indifferently" as the defendant moved through the Club. The victims and survivors described their terror as the defendant moved with a purpose through Club Q and continued shooting. Some victims and survivors hid from the defendant, others pretended to be dead to avoid additional gunfire, and others were able

6

to escape. One victim told law enforcement that she hid under a pool table as she watched the defendant moved through the club with the muzzle of the gun "flashing." Their harrowing accounts—many of which the Court will hear at the sentencing hearing—demonstrate the devastating and lasting effects of this crime on the victims, survivors, and their families.

Unsurprisingly, the victims and survivors of the shooting are still living with physical impacts from the shooting that require a significant amount of time and resources, including doctors' appointments and costs associated with care. Several victims have had multiple surgeries and other medical interventions to help heal the injuries caused by the defendant. Others have lost partial mobility of limbs as a result of their injuries, and their bodies are covered in the remnants of multiple bullet wounds. Still more victims described the feeling of bullet shrapnel that medical personnel were unable to remove working its way to the surface of their skin and the physical pain it causes.

Additionally, many of the victims, survivors, and their families are faced with a significant emotional trauma as a result of the defendant's actions. One victim who was inside Club Q, but not shot, described enduring lingering post-traumatic stress, and stated the defendant "impacted their ability to feel safe within the community." Those who have lost family and friends as a result of the shooting have suffered immeasurable loss. Therefore, the pain and suffering that the defendant inflicted on the victims in this case warrants the Recommended Sentence.

### B. *History and Characteristics of the Defendant*

As discussed in detail below, the defendant's conduct leading up to the attack on Club Q, including the defendant's planning and preparation for the attack and the defendant's repeated anti-LQBTQIA+ rhetoric, demonstrates that the Recommended Sentence is warranted in this case.

**1. The defendant spent time and effort preparing for the attack on Club Q.**

The planning and premeditation that the defendant engaged in prior to the attack on Club Q justifies the Recommended Sentence. As mentioned in detail above, the defendant amassed weapons and undertook significant efforts in the years preceding the shooting to ensure that the defendant had the proficiency with weapons to commit the attack. The defendant patronized Club Q at least eight times prior to the shooting and knew its layout. The defendant was at Club Q an hour and a half prior to the shooting and was aware that patrons and employees were there to celebrate Transgender Day of Remembrance, among other things.

The defendant's actions just before and during the shooting also underscore the defendant's planning and preparation. Immediately prior to entering Club Q, the defendant pulled up directly to the entrance of Club Q. The defendant entered Club Q with an AR-15 style assault rifle at high ready with a tactical light on and started firing upon crossing the threshold of the entrance. The defendant's attack on Club Q was immediate and unrelenting. The defendant moved directly through the entrance, firing at everyone in sight. Then, the defendant moved to the bar area where the defendant fired

multiple rounds at everyone gathered, including the patrons who were socializing and ordering drinks and the bartenders who were serving them. The defendant quickly proceeded to the dance floor, where the defendant fired additional rounds as the defendant moved toward the exterior patio door. The defendant paused to reload the magazine on the rifle before walking through the patio door. The defendant was prepared for additional attacks, as the defendant had additional magazines attached to a ballistic vest and a loaded pistol attached to the defendant's body. During this momentary pause, T.M., a brave Club Q patron, used a bucket to knock the defendant to the ground, getting shot in the chest in the process. R.F., another brave Club Q patron, came to T.M.'s aid. The two men subdued the defendant, preventing the defendant from harming additional victims.

In addition to scouting Club Q and amassing weapons, the defendant apparently intended to livestream the attack using an iPhone affixed to the hat that the defendant was wearing. Federal investigators identified an online profile associated with the defendant that contained a link to four video clips—the first of which appears to be recorded inside the defendant's apartment, and two of which appear to be recorded inside of a vehicle shortly before the Club Q shooting. This suggests that the defendant tested the livestream prior to the shooting and that the defendant hoped to share a livestream of the attack on Club Q.

## 2. The defendant has a history of bias motivated speech and behavior.

The defendant also undertook efforts in the years preceding the shooting to disseminate information and material showing a bias motive and the formation of the plan to attack Club Q. These actions also justify the Recommended sentence. The defendant created a website to post videos containing racist ideology, and discussion of racially motivated mass shootings. Additionally, as described herein, the defendant used online platforms to express anti-gay and anti-transgender views. Several of the defendant's online gaming friends reported the defendant's animus towards the LGBTQIA+ community and a series of messages by the defendant that appear to show preparations in the weeks prior to the attack on Club Q.

These bias motivated statements extended to the defendant's interactions in the physical world as well. A neighbor and a former landlord reported that the defendant used anti-gay slurs as recently as June 2022. The defendant was terminated by a job at Goodwill Industries in September 2022. Shortly after the termination, the defendant's former supervisor, who identifies as gay, received a barrage of emails containing anti-gay slurs and commentary. Online messages between the defendant and online acquaintances linked the defendant to these email attacks.

## 3. The defendant's history of mental health issues and childhood trauma

The Government expects that, as detailed in the Presentence Investigation Report [ECF #15], the defendant will present evidence regarding mental health issues and treatment, and childhood trauma. The defendant's personal background and

circumstances cannot justify or excuse what happened in this case. The Recommended Sentence takes all of this information into account, balancing it against the nature of the conduct and the other sentencing factors the parties jointly considered before entering into the plea agreement.

### C. *The Need for the Sentence to Achieve the Aims of 18 U.S.C. § 3553(a)(2)*

The Recommended Sentence will also reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and provide deterrence to criminal conduct. The defendant's actions traumatized the Club Q community, the larger LGBTQIA+ community of Colorado, and the country as a whole with devastating and lasting effects. Hate crimes like the defendant's impact a marginalized community such as the LGBTQIA+ community that already faces challenges seeking acceptance and safety. The employees and patrons of Club Q, and all members of the LGBTQIA+ community have the right to feel safe physically and in their own self-expression no matter where they are. The defendant's horrific crimes forever impacted the LQBTQIA+ community. Life imprisonment is a just punishment for these crimes. It sends a clear and deterrent message that attacks like this will result in serious consequences. It keeps the community safe from the defendant and prevents the defendant from committing further bias-motivated acts of violence. Finally, it vindicates the goals set forth in the Sentencing Commission Guidelines and policy statements. *See* U.S.S.G. § 3553(a)(2).

## **CONCLUSION**

The Government requests the imposition of the sentence required under the Plea Agreement and recommended by the Presentence Investigation Report [ECF #15] and Sentencing Recommendation [ECF #15-1].

Respectfully submitted this 4th day of June, 2024.

MATTHEW T. KIRSCH
Acting United States Attorney

By: *s/Alison Connaughty*
Alison Connaughty
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
alison.connaughty@usdoj.gov

By: *s/Bryan Fields*
Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
bryan.fields3@usdoj.gov

KRISTEN CLARKE
Assistant Attorney General, Civil Rights Division

By: *s/Maura White*
Maura White
Trial Attorney
Civil Rights Division, Criminal Section
950 Pennsylvania Avenue, 4CON
Washington, D.C. 20530
(202) 532-3827
maura.white@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 4, 2024, I electronically filed GOVERNMENT'S SENTENCING STATEMENT with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties on record.

      *s/Maggie Grenvik*
      Maggie Grenvik
      Legal Assistant