**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Raymond P. Moore**

Criminal Action No. 24-cr-00006-RM
(Civil Action No. 26-cv-02261-RM)

UNITED STATES OF AMERICA,

      Plaintiff/Respondent,

v.

ANDERSON LEE ALDRICH,

      Defendant/Movant.

---

## ORDER DENYING § 2255 MOTION

---

This matter is before the Court on the *pro se* motion of Defendant/Movant ("Aldrich") styled "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence" (ECF No. 43) (the "Motion"). The Court has considered the Motion and has also considered the "United States' Response to Motion to Vacate" (ECF No. 47) (the "Response"). The Court has considered Aldrich's "Response and Argument" (ECF No. 48) (the "Reply") as well. Finally, the Court has reviewed the docket generally. Based on its review, and for the reasons which follow, the Motion is DENIED.

### I.      Background.

On November 19, 2022, Aldrich walked into an LGBTQ+ nightclub in Colorado Springs, El Paso County, Colorado, called Club Q. He was wearing a tactical vest with ballistic plates and was armed with an assault rifle and a handgun. He immediately began firing. He killed five people and wounded many others. He discharged about 60 rounds before he was overpowered

and held for authorities by patrons of Club Q. Responding police then arrived and arrested Aldrich at the scene.

Parallel state and federal investigations ensued almost immediately. On November 22, 2022, an Order entered appointing the Office of the Federal Public Defender to represent Aldrich in connection with all federal proceedings. (*In Re the Matter of Anderson Lee Aldrich*, Misc. Case No. 22-y-332 (D. Colo. 2022) ("*Y Case*") at ECF. No. 1.) Only a few days later, on November 28, 2022, learned counsel was also appointed as the federal investigation had the potential to result in death eligible charges. (*Y Case* at ECF. No. 4.)

On June 26, 2023, Aldrich pleaded guilty in El Paso County District Court to five counts of first degree murder and forty-six counts of attempted first degree murder. He also pleaded no contest to two counts of bias motivated crime (one felony and one misdemeanor). (ECF No. 19-2 at 483-496; ECF No. 23 at 23.) He was sentenced to five consecutive life sentences on the first degree murder counts; 48 years on each of the attempted murder counts, consecutive to each other and to the life sentences; and 3 years on one bias count and 364 days on the other, both concurrent to each other and all other sentences. (ECF No. 23 at 23.)

By January 2024, Aldrich and the United States had come to an agreement to resolve all potential federal charges. On January 5, 2024, an information was filed. The information contained seventy-four (74) counts: hate crime acts (use of a firearm to cause death) in violation of 18 U.S.C. §§ 249(a)(2)(A)(ii)(I), (B)(ii), (B)(iii), (B)(iv)(I), and (B)(iv)(II) – Counts 1-5; hate crime acts (use of a firearm to cause bodily injury and attempt to kill) in violation of 18 U.S.C. §§ 249(a)(2)(A)(ii)(II), (B)(ii), (B)(iii), (B)(iv)(I), and (B)(iv)(II) – Counts 6-24; hate crime acts (use of a firearm to attempt to cause bodily injury and attempt to kill) in violation of 18 U.S.C. §§ 249(a)(2)(A)(ii)(II), (B)(ii), (B)(iii), (B)(iv)(I), and (B)(iv)(II) – Counts 25-50; use of a

firearm during and in relation to a crime of violence to commit murder in violation of 18 U.S.C. § 924(j)(1) – Counts 51-55; and use of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii) – Counts 56-74. (ECF No. 1.)

Before his initial appearance, Aldrich, through counsel, filed a notice of disposition. Aldrich then waived indictment at his initial appearance. And the parties jointly filed a Motion for Order Regarding Sentencing Procedure, essentially asking for a single setting for change of plea and immediate sentencing and also requesting a pre-plea presentence report. (ECF Nos. 4, 6.) Upon conclusion of the necessary proceedings before the magistrate judge on January 16, 2024, counsel for the parties went to the chambers of the assigned District Judge (the "Plea/Sentencing Court") (ECF No. 7-14.) An Order setting a combined plea/sentencing hearing for June 18, 2024, entered the next day. (ECF No. 12.)

On June 18, 2024, Aldrich pleaded guilty to all 74 counts of the information pursuant to a Rule 11(c)(1)(C) agreement with the United States. The parties agreed to the following sentences: life on each of Counts 1-55, concurrent with each other and with all other sentences being served by Aldrich; and ten (10) years on each of Counts 56-74, consecutive to each other (total of 190 years), to the life sentences for Counts 1-55, and to any other sentence Aldrich was otherwise serving. (ECF No. 34 at 2.) The agreement contained both appeal and collateral attack waivers, an agreement to pay restitution as determined by the Plea/Sentencing Court, an abandonment of certain property, assignment of publicity profits to the United States, and a promise from the United States (i) to recommend to the Colorado Department of Corrections ("DOC") that Colorado retain primary jurisdiction over Aldrich and (ii) to recommend denial of any transfer of Aldrich into federal custody if such a request were to be made by the DOC. (ECF No. 34.) Following the change of plea, the Plea/Sentencing Court proceeded to immediate

3

sentencing, accepted the plea agreement, and imposed the sentences to which the parties had agreed pursuant to Rule 11(c)(1)(C).

Judgment entered on June 21, 2024. (ECF No. 36.) An Amended Judgment entered on September 16, 2024, adding restitution determinations made after the original sentencing. (ECF No. 41.) Aldrich did not appeal.

On May 22, 2026, almost two years after he was first sentenced and about 18 months after the Amended Judgment entered, Aldrich filed the Motion. The Motion reflects that it was signed on May 13, 2026. It contains six separate grounds for relief: (1) ineffective assistance of counsel "by way of inability to be able to plea legally," (2) ineffective assistance of counsel "by conflict of interest," (3) ineffective assistance of counsel "by not checking my mental health," (4) recording and disclosure of attorney-client communications by El Paso County Sheriff's Office, (5) ineffective assistance of counsel "by means of going against defendant," and (6) ineffective assistance "by going against defendant's wishes." And he asked for "a new trial."

Aldrich recognized that the Motion was untimely. The Motion claims that he is "eligible for equitable tolling." It presented six justifications for applying the doctrine: (1) being under the influence of "mind altering medication until very recently," (2) repeated violations of "my 6th amendment rights," (3) repeated changes of facilities and minimal time outside of the SHU as well as experiencing incidents of violence, (4) "I may be insane or autistic or both," (5) "I have debilitating mental illness and need help," and (6) "I have not been evaluated for insanity or autism … for ASPD, psychopathy, etc." (Motion at 11.)

On June 15, 2026, this matter was reassigned from the Plea/Sentencing Court to this Court.

4

The next day, on June 16, 2026, the government filed its Response. In it, the government opposed the Motion. The United States argued that the Motion is untimely and that a proper basis for equitable tolling has not been shown. The government also responded that one of Aldrich's claims (Claim 5) was subject to the collateral challenge waiver contained in the plea agreement and that each of Aldrich's claims fails on the merits.

On July 14, 2026, Aldrich filed the Reply. It is a legally worthless pleading which responds to nothing and only belches out hate disguised as religion. It will be addressed only at the end of this Order.

## II.    Analysis.

### A.  Timeliness.

There is no dispute as to whether the Motion was timely[1]. It was not. At the latest, it needed to be filed by September 30, 2025, and it was not. As it is untimely, it can only be saved if the doctrine of equitable tolling is applied. To apply, Aldrich must demonstrate both that he diligently pursued his claims and that extraordinary circumstances beyond his control prevented timely filing. *United States v. Gabaldon*, 522 F.3d 1121, 1124 (10th Cir. 2008). The remedy is intended to be "a rare remedy" to only be applied in "unusual circumstances" *Yang v. Archuleta*, 525 F.3d 925, 929 (10th Cir. 2008). And it is Aldrich's burden to provide specific facts supporting the doctrine's application. He has not done so.

Aldrich's last three justifications amount to little more than pleas for sympathy or, perhaps, simply throwing mud against the wall to see what sticks. He says, "I may be insane or autistic or both." He also says, "I have debilitating mental illness and need help." Finally, he

---

[1] Under § 2255(f)(1), a petition must be filed within one year of the date on which the judgment of conviction becomes final. In certain circumstances not applicable here, the start of the one-year deadline may be tethered to later events. § 2255(f)(2) – (f)(4).

claims, "I have not been evaluated for insanity or autism … for ASPD, psychopathy, etc." None of this establishes a basis for application of equitable tolling. If these circumstances and conditions exist now and have not prevented the filing of the Motion, how did these circumstances and conditions prevent a timely filing previously? Aldrich does not say. His mere declarations do not clear the high bar which exists for justifying equitable tolling.

His first three justifications, considered in reverse order, fare no better. He refers to confinement conditions which included facility changes, time in the SHU, and incidents of violence. He claims not to have had adequate time to acquire stamps and research. But he provides no specifics at all – such as a timeline as to when and where things occurred. Nor does he explain how these matters impacted his ability to file a timely 2255 petition before September 30, 2025, but no longer do so. This Court does not suggest that such matters can never provide a basis for equitable tolling, but broad and general declarations about confinement circumstances lacking in specifics as to timing and direct impact will not suffice.

Aldrich refers to violations of his "6th amendment rights." This justification is so general that the Court cannot even discern how it might relate to equitable tolling. If Aldrich claims that his ineffective assistance of counsel claims themselves automatically justify equitable tolling, his reasoning is circular and wrong. If he claims something else, it is not clear what. Whatever he means to claim, the recited justification does not meet Aldrich's burden.

Finally, there is Aldrich's first basis for tolling – being under "mind altering" medication which prevented him from exercising due diligence. Here, at least, there is the potential for a viable basis. But not as presented by Aldrich.

Again, Aldrich's contention is vague and lacking in specifics. What medication is he referring to? The Court is not told. When did he first start taking the medication? The Court is

not told? How did this medication affect him? The Court is not told. Is he referring to the same medication that he was taking at his change of plea?" The Court is not told.

The fact that a medication is being taken, even a "mind altering" one, does not mean that a person's mental capacity is necessarily impaired. It may well be helped by medication. With no specifics and no records pertaining to his medications, the Court has no ability to discern anything meaningful as to Aldrich.

If the medication Aldrich refers to is actually the medication he was taking at the time of his plea, any claim that such medication hindered Aldrich is inconsistent with the record. At the plea portion of the June 18, 2024, hearing, the following exchanges with the Plea/Sentencing Court occurred:

> THE COURT: All right. Let's turn to the psychiatrist or psychologist. Are you on any mental health medications?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And do you know what those are?
>
> THE DEFENDANT: I think I know most of them.
>
> THE COURT: Would you please list them?
>
> THE DEFENDANT: Let's see, Zoloft, Rexulti, oxcarbazepine, Tegretol. There's quite a few. Oh, yeah, Sublocade. There's probably more, but I'm not recalling the rest of them at the moment.
>
> THE COURT: Let me ask this. For what conditions are you taking those medications?
>
> THE DEFENDANT: A variety of things. Can my lawyer help with this?
>
> THE COURT: Let me have you try first, because I need to make sure you're understanding what's going on. So have you been diagnosed with any mental health condition?

7

THE DEFENDANT: Yes.

THE COURT: And what have you been diagnosed with?

THE DEFENDANT: OUD, PTSD, GAD, depression, substance abuse disorder, various things like that, I believe. That's pretty much the list.

       \*\*\* \*\*\*               \*\*\* \*\*\*

THE COURT: Have you noticed any serious side effects of those medications?

THE DEFENDANT: No, Your Honor.

THE COURT: Have you noticed any of the medications affecting your ability to recall or think clearly?

THE DEFENDANT: No, Your Honor.

       \*\*\* \*\*\*               \*\*\* \*\*\*

THE COURT: All right. You feel you're thinking clearly and able to understand the proceedings?

THE DEFENDANT: Yes, Your Honor.

(ECF No. 38 at 9-11.)

Beyond this, there are additional difficulties as well. "Allegations of mental incompetence alone ... are generally insufficient to warrant equitable tolling." *Wiegand v. Zavares*, 320 Fed.Appx. 837, 839 (10th Cir. 2009) (unpublished). "[A defendant] needs to show that he had been institutionalized for mental incapacity, judged incompetent, or not capable of pursuing his own claim during the period in which he needed to file his application." *Alvarado v. Smith*, 713 Fed. Appx 739, 743 (10th Cir. 2017) (unpublished). Aldrich clearly fails under this standard. He has not been institutionalized, judged incompetent, or shown to have been incapable of filing a timely petition. All he has done is self-proclaim some unspecified incapacity which he suggests is medication based.

The Motion is untimely. No adequate basis for application of equitable tolling has been shown to exist. Any request for application of the doctrine is denied.

### B. Merits.

Each of the claims or grounds set forth in the Motion lacks merit. All of these claims seem postured as ineffective assistance of counsel claims. That is because of Aldrich's plea agreement. While he waived the right to collaterally challenge his conviction and/or sentence, there was a specific waiver exception for claims of ineffective assistance of counsel.[2] The Court will generally accept Aldrich's classification of his claims.

The Supreme Court has established a two-prong test to evaluate ineffective assistance of counsel claims. *Strickland v. Washington*, 466 U.S. 668 (1984) ("*Strickland*"). Aldrich must show that counsel's performance fell below an objective standard of reasonableness and that the deficient performance was prejudicial. *Id.* at 687. There is a "strong presumption" that counsel's performance falls within the range of "reasonable professional assistance." *Id.* Counsel's performance must be more than merely "wrong" in some way. It must be "completely unreasonable." *Hoxsie v. Kerby*, 108 F. 3d 1239, 1246 (10th Cir. 1997). And in terms of prejudice, Aldrich must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694. Where, as here, the defendant has pled, he must show that but for the errors, there is a "reasonable probability" that he would have insisted on going to trial. *United States v.*

---

[2] As noted above, the Response takes the position that one of Aldrich's claims (Claim 5 – the Office of the Federal Public Defender would not change his appointed counsel on his demand) is not truly an ineffectiveness claim and has been waived. A similar argument could be made with respect to Claim 4 – sheriff allegedly recording privileged communications. If not construed as a species of ineffective assistance, these claims would likely be barred by the waiver provision of Aldrich's plea agreement (ECF No. 34 at 3-4). Aldrich has never put forth any basis for the Court to conclude that the waiver should not be enforced. But as the Court concludes that Aldrich's claims fail as stated, it need not reach the waiver issue.

*Dominguez*, 998 F.3d 1094, 1111 (10th Cir 2021) ("*Dominguez*"); *United States v. Clingman*, 288 F.3d 1183, 1186 (10th Cir. 2002).

### 1.   Ineffective Assistance – Inability to Plea

This claim is basically the same contention as was used in an attempt to justify equitable tolling. Aldrich claims that he was taking mind altering or psychotropic medications. And because of this, counsel should not have proceeded to a change of plea as Aldrich was incompetent to plead. Aldrich claims that he has "the documentation proving" the types of medications he was taking. No such records have been provided to the Court.

Records aside, within a span of one year, two different sets of lawyers represented Aldrich in plea hearings in two different jurisdictions. No counsel and neither court showed doubt as to his mental capacity as he was twice allowed to plead. In this case, after exchanges including the ones set forth earlier, The Plea/Sentencing Court concluded:

> THE COURT: All right. Based on the statements of Defendant Aldrich, as well as my own observations, I find that Defendant Aldrich is competent to proceed.

(ECF No. 38 at 11.)

As noted earlier, Aldrich asked to have his attorney help with providing information to the Plea/Sentencing Court. That Court, prior to finding Aldrich competent, spoke with counsel as Aldrich had requested:

> THE COURT: All right. Now let me ask Mr. Kraut. Is your client on any antipsychotic drugs?
>
> MR. KRAUT: No, Your Honor.
>
> THE COURT: All right. In your words, how would you describe the conditions for which he's being treated?
>
> MR. KRAUT: I would echo what Anderson Aldrich just mentioned. Those are the diagnoses that I'm familiar with through reading the records

10

that have been produced throughout Anderson's life. I also believe that in most recent history while incarcerated Anderson has been stable on the medications that they listed, and there haven't been, to my knowledge, any major changes in those medications in several months.

THE COURT: All right. Thank you.

(ECF No. 38 at 10.) Not once did Aldrich express disagreement or seek to correct counsel.

As a matter of deficient performance by counsel, the first claim simply fails. Aldrich has shown nothing that suggests that counsel was aware of or should have been aware of an issue with respect to Aldrich's ability to plead. On the contrary, counsel stated the opposite, and Aldrich endorsed counsel by advising the Court, essentially, that counsel should be consulted on the issues of his diagnoses and medications as counsel had good knowledge.

The Court also considers the validity of the plea separate and apart from any claim of inadequate performance of counsel. Viewed directly as a challenge to the validity of the plea, Aldrich's claim still fails. Aldrich provides nothing beyond his declaration, and the record is entirely inconsistent with such declaration.

Aldrich told the Plea/Sentencing Court that he was clear minded and able to understand and to proceed. The Court is entitled to rely on Aldrich's sworn statements made to the Plea/Sentencing Court. They, not his current self-serving declarations, are entitled to the presumption of truth. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 74 (1977). "[T]he truth and accuracy of a defendant's statements during the Rule 11 proceeding should be regarded as conclusive in the absence of a believable, valid reason justifying a departure from the apparent truth of his Rule 11 statements." *United States v. Weeks*, 653 F.3d 1188, 1205 (10th Cir. 2011).

## 2.  Ineffective Assistance – Conflict of Interest.

Aldrich alleges that AFPD Natalie Stricklin[3] played a pivotal role in his decision making. But then, he says, "right before my choice of going to trial or not, Natalie Strickland was removed from the docket and became a US Judge." It appears that he is suggesting that her becoming a "US Judge" (presumably for the District of Colorado) created a conflict by having the Plea/Sentencing Court now privy to his thoughts, strategy, and secrets.

There are several problems with this claim. To begin, Ms. Stricklin did not become a "US Judge" of any sort. On November 17, 2023, Colorado's governor selected her to become a state court judge in the 18th Judicial District (Arapahoe County) effective December 1, 2023. So, the Plea/Sentencing Court and this District gained neither actual nor the appearance of knowledge of her representation of Aldrich.

Next, there is no authority for the proposition that a conflict is created whenever defense counsel decides to change careers. Aldrich cites none. The Court cannot even hypothesize how the mere act of accepting a position in a jurisdiction having no association with Aldrich or his offense creates a conflict of interest for defense counsel. It does not.

Finally, the notion that Ms. Stricklin's leaving the case caused disruption is overstated and not consistent with the facts. At the plea and sentencing hearing, Aldrich was represented by an attorney from the same office as Ms. Stricklin – David Kraut. He was no newcomer to the case. Both Ms. Stricklin, he, and learned counsel (Theresa M. Duncan) had been working on the case for some time. And as for Ms. Stricklin leaving just when Aldrich was considering whether or not to plead, the record suggests otherwise.

---

[3] Aldrich misnames her as Natalie "Strickland."

12

On June 28, 2023, just after Aldrich had pleaded in state court, a letter was sent to the AUSAs on the federal case by Aldrich's federal attorneys urging the government to accept a plea proposal "which we submitted last month" and take the death penalty off the table for Aldrich. That letter was signed by Natalie Stricklin. It was also signed by David Kraut and Theresa Duncan. Mr. Kraut was on Aldrich's case from early on. And the entire defense effort was to secure an acceptable agreement to which Aldrich would plead. Any possible suggestion that Ms. Stricklin would have been in favor of trial or urged Aldrich to proceed to trial is not credible. And Aldrich has not alleged that remaining counsel was deficient in helping him evaluate the alternatives of a trial or a plea. (ECF No. 19-1.)

There was no deficient performance by any defense counsel, in the form of conflict or otherwise, created by Ms. Stricklin's acceptance of a state judicial position.

### 3.    Ineffective Assistance – Not Checking Aldrich's Mental Health.

Aldrich claims that counsel did not have a mental health evaluation performed and that this was ineffective. But again, the alleged ineffectiveness is unsupported and only the product of Aldrich's declaration.

Counsel did not ignore Aldrich's mental health at all. The record refutes any such suggestion. The June 2023 letter referenced earlier described and attached various medical records from over Aldrich's lifetime concerning his mental health. (ECF Nos. 19-1, 19-2.) And at his change of plea, Aldrich wanted the Plea/Sentencing Court to turn to defense counsel for discussion of his mental health and medications. Nothing about the counsel's decision to proceed to a plea hearing (which also mirrors the choice made by state counsel) suggests deficient performance falling short of an "objective standard of reasonableness" as required by *Strickland*. Aldrich does not provide any facts which would or should have caused counsel to question his

13

legal competency after interacting with him for over a year. The fact that multiple counsel across two jurisdictions acted similarly suggests that Aldrich did not display signs of "legal incompetence."

Aldrich has not demonstrated that counsel rendered ineffective assistance in having death removed from consideration and having Aldrich plea to sentences which, in a real world sense, added nothing to the time Aldrich would actually spend incarcerated for his actions at Club Q. Aldrich wants the Court to believe that if a mental health evaluation had been done, he would have been found to be incompetent to proceed. Or perhaps that some reasonable trial defense would have been discovered. But Aldrich provides no basis other than his limited declaration for believing this to be true. General mental health issues and legal impediments or defenses based on mental health are not one and the same. Here, the most that can be done to determine whether an inability to plead or a trial defense existed is to speculate about possible answers. Such speculation does not satisfy Aldrich's burden.

### 4. Ineffective Assistance – Recorded Visits.

Aldrich asserts that his meetings with counsel were recorded and leaked by the El Paso County Sheriff's Office. However, he offers no proof and sets forth no facts. What was recorded? When? Who knew? What was leaked? By whom? To whom? Aldrich does not say, much less support his claim with anything beyond his one sentence declaration. He has provided no facts to suggest that this happened or to support any notion that the federal prosecutors or defense counsel were involved or even aware. Nor does he contend that allegedly recorded privileged communications were provided to or reviewed by his federal prosecutors. Put simply, nothing is presented other than an allegation, and one which is wholly conclusory at that. A

14

defendant is not entitled to relief on the sole basis of such vague and conclusory allegations. *United States v. Hall*, 746 Fed. Appx. 773, 774-75 (10th Cir. 2018) (unpublished).

5. **Ineffective Assistance – Going Against Defendant**.

Aldrich alleges that he sent a letter to the Federal Public Defender or First Assistant[4] saying that he wanted a new lawyer, but "they wouldn't change him." And "he wouldn't tell me how to fire him properly." Presumably, he refers to Mr. Kraut. This, Aldrich alleges, is ineffective assistance. It is not.

Once again, details are lacking. That aside, Aldrich has no right to appointed counsel of his choosing. He has no power to "fire" appointed counsel either. He could ask the Court, but he never did. Regardless, it is not ineffective for an Office to fail to swap out lawyers simply because Aldrich demanded it. More to the point, it does not matter if he liked counsel or had some argument with him. What matters is counsel's performance. And this claim in no way implicates that performance.

Again, the record is of no help to Aldrich. Whatever the case at some earlier point in time, Aldrich was no longer critical of counsel by the date of his plea. In connection with that plea, he filed a Statement By Defendant in Advance of Plea of Guilty. (ECF No. 35.) In it, he states:

> I have had sufficient opportunity to discuss this case and my intended plea(s) of guilty with my attorney. I do not wish to consult with my attorney any further before I enter my plea(s) of guilty.
>
> I am satisfied with my attorney. I believe that I have been represented effectively and competently in this case.

(ECF No. 35 at 8.)

---

[4] These are the only two who could be characterized as a supervisor or boss for trial side AFPDs.

Consistent with such statements, he swore to the following before the Plea/Sentencing Court:

> THE COURT: Are you satisfied with your attorneys' representation of you in this case?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Is there anything you think your attorneys should have done but didn't do on your behalf?
>
> THE DEFENDANT: No, Your Honor.

(ECF No. 38 at 12.)

As previously noted, the Court is entitled to rely upon such sworn statements. Deficient performance has not been shown.

### 6.    Ineffective Assistance – Going Against Defendant's Wishes.

Aldrich asserts that counsel filed "multiple motions" which Aldrich instructed him not to file. Nothing about this constitutes ineffective assistance. At the outset, it is unclear what "motions" Aldrich references. Counsel filed two pleadings over the limited life of this case before the Court. He filed a Joint Motion Regarding Sentencing Procedure (ECF No. 4) and a Sentencing Statement (ECF No. 19). The former simply requested a combined plea/sentencing hearing. The latter was a statement in mitigation. If not these, then the Court cannot determine what "motions" Aldrich refers to. Perhaps he is referring to the mitigation letter signed by all defense counsel as its discussion of Aldrich's background might have, in his eyes, "looked really bad on my part."  If any of these, the Court has reviewed the documents and finds nothing constituting deficient performance about any of them. If not these, the Court cannot determine what Aldrich refers to. His claim is vague and conclusory at best.

16

At the root of his claim is an apparent belief by Aldrich that counsel must at all times follow his instructions in terms of what to file and not file. Not so. Counsel is not a sock puppet, and Aldrich does not control counsel to the degree he seems to believe. The very reason for having counsel appointed is so that competent legal decisions get made. Such decisions will not always be ones which please a defendant. True, a defendant controls certain core decisions (e.g., whether to plead or to testify), but most other decisions, especially tactical ones, are controlled by counsel. "[T]actical decision[s]" belong to counsel, who possesses "full authority to manage the conduct of the trial." *Taylor v. Illinois*, 484 U.S. 400, 417 & 418 n.24 (1988). Aldrich's claim fails to show any objectively unreasonable performance. The fact that Aldrich did not agree with some unspecified filing decision does not mean that counsel was deficient. It simply means that Aldrich was unhappy about some decision. In a vacuum, that is of no importance.

### 7. Prejudice.

Up to now, the Court has focused solely on counsel's performance. But as noted, *Strickland* ineffectiveness is decided by applying a two-pronged test. Deficient performance is one prong. Prejudice is the other. Prejudice must be shown. And because he pleaded guilty, Aldrich must show that he would have insisted on trial but for counsel's error. *Dominguez*.

The prejudice prong has not been satisfied by Aldrich. It has hardly been even addressed. Aldrich's requested relief is for "a new trial," but what he now wants is not necessarily a statement that this would have been desire prior to or at the time of his change of plea but for some failure of counsel. Further, Aldrich does nothing by way of attempting to show a reasonable probability that he would have elected to go to trial but for counsel's alleged errors.

A reasonable probability of going to trial makes little to no facial sense with respect to most of Aldrich's claims. If Natalie Stricklin had stayed on the case, Aldrich would have insisted on trial? Why? And what about the fact that she was proposing a plea as early as May of 2023?

17

If counsel had him tested, Aldrich would have insisted on trial? Without knowing the outcome of the testing, how could he or anyone possibly say so? If his conversations had not been recorded, he would have gone to trial. Why? What about the alleged recording gave the federal prosecutors any advantage? What was even recorded, if anything? If Mr. Kraut had been replaced by another member of his office, Aldrich would have gone to trial? Why? What reason is there to think other lawyers in the same office would have handled things so differently? Was there some superior trial lawyer that Aldrich was pursuing in the Defender's office? If counsel had not filed some unspecified pleadings that Aldrich objected to, he would have gone to trial? Why? To what end? What "motions" is he even talking about, and how did their filing affect his decision to plead? Only the first claim, that his plea was invalid and the product of mind altering medication, can be understood in terms of prejudice. And that is because if the plea was legally invalid, prejudice is presumed. No true choice was ever made. But as has been shown, the record in this case does not support the notion of a legally invalid plea – caused by counsel or not.

Aldrich never attempts to explain why he would not have pleaded guilty but for some error of counsel. It is true that if death was permanently off the table, Aldrich had little to meaningfully lose (in terms of a sentence) in going to trial. But there was also nothing to reasonably gain by a trial in a case where there was overwhelming evidence against Aldrich (and there was – *see*, ECF No. 18) which included being on camera in Club Q committing the charged offenses and being forcibly disarmed, overpowered and held for authorities by two of the very people he sought to murder?[5] In any event, the obligation is not on the Court to assume what Aldrich would have done or hypothesize as to why. The obligation is on Aldrich to make the

---

[5] The government attempts to characterize its promise to ask the DOC to keep Aldrich in its primary custody and to recommend that any transfer to federal custody be rejected as especially valuable. The Court does not view this promise as being near as valuable as the government. And, as is now obvious, not much came of this promise by way of actual outcome. Aldrich is now serving his sentences at USP Big Sandy.

18

claim that he would not have pled and to show a reasonable probability that he would have insisted on trial but for errors of counsel. He has made no such actual claim. And he has failed to show a reasonable probability of insisting on trial.

### 8.    The Reply.

The Reply contains nothing more than expressions of hatred coupled with impotent demands and warnings both to the Court and to the government. All that it accomplishes is to provide some proof that the sentence imposed in this matter was minimally correct. But the Court refuses to let the docket serve as a soapbox for Aldrich's hate as spread across the Reply. It has Ordered that the pleading be restricted.

On its face, the Reply contains nothing by way of an actual counter to the Response. Aldrich's statements lack any semblance of legal merit. But the Reply does tease at an intriguing question. Is it intended to be what it appears to be on its face. Expressions of hatred of a class of people because Aldrich has no other response to the legal deficiencies of the Motion as identified by the government? If so, then Aldrich has expressed himself. Or could the Reply be just a bit manipulative? Meaning, does Aldrich pivot to showing an arguably "mentally disturbed" side in order to persuade the Court that he really should not have been allowed to plead. After all, in the midst of his Reply, he stops his rant to ask the Court to explore "the implications of depriving a potentially incompetent person" of his constitutional rights. If so intended, the Reply proves the exact opposite.

When he filed the Motion in May of 2026, Aldrich claimed that he had only recently been off his medications. His words were, "I just got off my meds last week." (Motion at 4.) Aldrich admits that he was on medication at the time of his plea. The record confirms this. It also confirms that he acted intelligently and competently while on his medications. If the Reply is an indication of Aldrich "off meds," then all that he has done is to show that he needed medications

19

at the time of his plea, and that he was (compared to now) stable and competent while on medication - both at the time of his plea and prior to the deadline for filing a timely petition under § 2255(f)(1). In short, the Reply's rants and attempts at justifications only reinforce the earlier conclusion that Alrich's medication did not interfere with his competence. Regardless of what he was trying to do, the Reply fails to bolster Aldrich's legally inadequate claims for § 2255 relief.

**III.    Conclusion.**

The Motion is untimely. Aldrich is not entitled to equitable tolling. And Aldrich's claims are without merit in any event.

This matter can be and is conclusively resolved on the basis of the Motion, the Response, the Reply, and the files and records of the case. As a result, no hearing is required. For all of the reasons set forth above,

IT IS ORDERED:

That the Motion (ECF No. 43) is DENIED;

That no basis exists on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c); and

That it is certified that any appeal from this Order is not taken in good faith, therefore, *in forma pauperis* status is denied for purposes of any appeal.

DATED this 17th day of July, 2026.

BY THE COURT:

RAYMOND P. MOORE
Senior United States District Judge

20